MORDECAI F. ENDICOTT, respondent,

*v.*

PHILIP MARVEL et al., appellants.

[Argued June 17th, 1914. · Decided November 16th, 1914.]

1. A corporation borrowed of five of its seven directors and pledged its own stock as collateral, giving collateral notes in the ordinary form, authorizing a sale in default of payment at maturity; there was default in payment, but nothing further was done; there was no demand for payment, no sale. no foreclosure, no notice to redeem. The stock became very valuable and upon liquidation of the company, much more was realized than sufficed to pay the notes.—*Held*, that a stockholder had the right to insist upon the redemption of the stock by paying the debt and interest and upon. the return of the overplus to the treasury of the corporation.

2. Where five out of seven directors of a corporation held stock as a pledge for money loaned the corporation, and it was claimed that the right to redeem had been lost by laches—*Held*, that there was no laches as long as the pledgor had no opportunity to act, and that as the corporation was always in the control of the pledgees, the pledgor never had a chance to redeem, and there was no laches.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *81 N. J. Eq. 378.*

*Mr. Joseph H. Gaskill* and *Mr. Allen B. Endicott,* for the respondent.

*Mr. Robert H. McCarter* and *Mr. George A. Bourgeois,* for the appellants.

The opinion of the court was delivered by

SWAYZE, J.

We think this case presents little difficulty. In 1898, five out of seven directors of St. Leonard's Land Company loaned about

fifteen hundred dollars each to the company for its immediate and pressing needs. Each was given a collateral note in the ordinary form; pledging thirty shares of stock of the company as collateral and authorizing a sale in default of payment at maturity at private sale without notice to the company and with the right to the pledgee of becoming the purchaser. There seems to be no question that the transaction was a proper one and for the benefit of the company at a time when it was otherwise impossible for it to secure needed funds. There was default in payment. Nothing further seems to have been done. There was no demand for payment, no sale, no foreclosure, no notice to redeem. The stock became very valuable, and upon liquidation of the company much more was realized than sufficed to pay the notes. The five directors, however, retained the money, including the excess after payment of the notes, and do not seem even to have returned the notes to the corporation. Thereupon a stockholder filed this bill seeking an account, and praying that the five directors accept each the amount due with interest and pay into the treasury of the company all dividends and profits.

This presents a plain case of a pledgee who seeks to retain the pledge without calling upon or giving the pledgor a chance to redeem or pursuing the remedy by sale specially pointed out in the notes. It was no doubt a breach of the duty of the defendants as directors to fail to redeem, for the benefit of their company, the stock pledged, as soon as the company was in funds, but the complainant's rights do not rest upon this breach. He may properly insist that the rights of the pledgor corporation shall be protected against the pledgees. The directors seem to have thought that under the resolution the stock became their absolute property at the end of the year. The language of the resolution is: "The company to have the privilege of redeeming the stock in one year from date with interest at 6 per cent., otherwise to revert to the borrower." (The use of the word "borrower" is explained by the fact that each of the five directors was to borrow the money he was to loan the company.) The language is not apt to express an intent to foreclose automatically, without notice or sale, the ordinary right of a pledgor to

redeem, even though there has been default in payment when the loan was due; but if we assume that apt language for that purpose had been used, the case of the defendants would not be helped. That for three reasons—*first,* because an agreement of that kind in a contract of pledge is inconsistent with the contract itself which by its very nature involves a right to redeem (*31 Cyc. 858, 859; Jones Pl.* §§ *554, 555*); *second,* because it would be a contract of a harsh and unusual character between directors and their corporation to the personal advantage of the directors; *third,* because the pledgor was controlled by the five pledgees and could not redeem except by action of the pledgees, who were thus necessarily put in a position where their personal interest was adverse to that of their company. An agreement to waive the right to redeem the pledge is always scrutinized by the courts with jealous care and cannot be enforced where the pledgor has no opportunity to redeem unless the pledgee chooses.

In this case, the agreement giving the pledgor the privilege of redeeming in one year seems to have been made in October, 1898, while all but one of the loans were made at an earlier date. This does not help the defendants. They still retained the notes authorizing a sale in the usual fashion of collateral notes, and the action in October was clearly meant as a performance of the agreement to pledge the stock as collateral, and a ratification of the notes already given. We cannot otherwise explain the language of the resolution that each director borrow the sum of $1,500 and receive company's stock as collateral. (We pass over as unimportant for the present purpose the discrepancy between the fifty per cent. excess of stock authorized by the resolution and the one hundred per cent. excess actually pledged.)

The notes and the resolution must be read together, and by their terms, no absolute title could be acquired by the pledgees except by a sale. There was no such sale and their title continued to be by way of pledge only.

This view of the case disposes of the argument directed to what were called promoters' profits and the limitation of time applicable to actions for their recovery.

There were no promoters involved and no profits. It is a case of a pledgee attempting to retain for himself the proceeds of the pledge over and above the amount of the debt.

We are referred to numerous cases where the rights of the pledgor have been held to be forfeited by laches and long delay. All were cases where a sale had been had and the pledgor delayed in objecting; we do not question that informalities in proceedings to foreclose a pledge may be waived by delay in making objections. We are pointed to no authority which holds that the right to redeem can be cut off without any proceeding whatever. If it could, the laches would not begin to run until the pledgor had an opportunity to act, and in this case the pledgor corporation was always in the control of the pledgees and never had a chance to redeem.

We are not concerned with the question to which the stress of the argument was directed. Whether the other two directors acted liberally to the corporation in refusing to help, as the five directors did, whether they had knowledge of what was done, whether they will profit by the calling to account of their five associates, is of no consequence. The complainant as a stockholder has the right to insist upon the performance of the contract of pledge, upon the redemption of the stock by paying the debt and interest, and, since the pledgees already have received more than enough for that purpose, upon the return of the overplus to the treasury of the corporation.

The decree is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS—12.

*For reversal*—None.